IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHANIE ANN ADAMS,

      Plaintiff,

vs.                                                          Civ. No. 06-273 RHS

MICHAEL J. ASTRUE,[1]
**Commissioner of Social Security,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

    1.  THIS MATTER comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing ("Motion"), filed September 1, 2006 **[Doc. 11]**. Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") on Plaintiff's application for social security disability and insurance benefits. Plaintiff alleges that she became disabled on October 1, 2002,[2] due to anxiety, depression and schizophrenia. (Transcript ("Tr.") at 19, 69, 298). Plaintiff's date of birth is April 29, 1971. (Tr. at 64). Plaintiff has an eleventh grade education and has worked in the past as a painter, cashier, cook, factory assembler, cleaner and waitress. (Tr. at 75, 78).

    2.  Plaintiff "filed concurrent applications [for social security benefits] under Title II and

---

    [1]Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart as defendant in this proceeding. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2]Plaintiff has also indicated that she "bec[a]me unable to work because of [her] . . . conditions" in December of 2002. (Tr. at 69).

Title XVI on June 11, 2003." (Tr. at 19,[3] 64).  Following an administrative hearing, the ALJ issued a decision on August 19, 2005 finding that Plaintiff was not disabled "as defined under Title II or Title XVI of the Social Security Act at any time through the date of this decision."  (Tr. at 20).  On February 7, 2006, the Appeals Council denied Plaintiff's request for a review, thus rendering the ALJ's decision the final decision of the Commissioner. (Tr. at 4).  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

     3.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson, 987 F.2d at 1486 (citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

     4.  At the first four levels of the evaluation, the claimant must show:  (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past.  At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than  past relevant

---

[3]In the last paragraph of his decision, the Administrative Law Judge ("ALJ") indicates that Plaintiff's applications were filed on June 26, 2001.  (Tr. at 21).

work.  Thompson, 987 F.2d at 1487 (citations omitted).

    5.  The ALJ determined at step four that Plaintiff is not disabled because she "is able to perform her past relevant work."  (Tr. at 21).  The ALJ found, "[i]n the alternative," at step five that "application of rule 204.00 as a 'framework' supports the same decision."  (Tr. at 21).

    6.  Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) "[t]he ALJ's past relevant work analysis failed to follow controlling law"; (2) "the ALJ's residual functional capacity finding at step five is unsupported by substantial evidence and is contrary to law"; (3) the ALJ's failure to utilize a Vocational Expert ("VE") "compounded the previous error at step five"; and (4) "the ALJ denied [Plaintiff] . . . due process of law by failing to allow her to call a witness . . . and by failing to develop the record."  (Plaintiff's Memorandum in Support of Motion ("Memo") at 3, filed Sept. 1, 2006 **[Doc. 12]**).

    7.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

### *First Alleged Error - the ALJ's past relevant work analysis*

    8.  Step four of the sequential analysis is comprised of three phases.  In the first phase, the ALJ must evaluate a claimant's physical and mental RFC.  Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted).  In the second phase, the ALJ must determine the physical and mental demands of the claimant's past relevant work.  Id. (citation omitted).  In the third phase, the ALJ must determine whether the claimant has the ability to meet the job demands

found in phase two despite the claimant's limitations found in phase one.  Id. (citations omitted).  "At each of these phases, the ALJ must make specific findings."  Id. (citing Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)).  Plaintiff alleges that the ALJ erred at each phase of the step four analysis.

      9.  Plaintiff's primary allegation of error with respect to phase one is that the ALJ failed to appropriately consider the findings and limitations set forth in several medical opinions in determining Plaintiff's mental RFC.  Specifically, Plaintiff contends that the ALJ erred in ignoring some of the findings of Kevin Eggerman, M.D. and in failing to analyze and assign weight to medical opinions of other physicians.  The Court agrees.

      10.  The ALJ concluded that Plaintiff has a mental RFC "for routine, entry level work which includes the ability to perform her past relevant work as a cleaner and assembler."  (Tr. at 19).  The ALJ further found "no documented restriction in [Plaintiff's] activities of daily living, *no* inability to get along with others, especially in light of the fact that she lives with seven other people and there is *no* lack of concentration, persistence or pace for the performance of simple, routine tasks in the jobs such as a cleaner and assembler.  There is *no* evidence of withdrawal behavior."[4]  (Tr. at 20) (emphasis added).

      11.  Among the evidence considered and discussed by the ALJ was a report by a consulting psychiatrist, Dr. Eggerman, regarding an examination of Plaintiff on September 19,

---

[4] The Court notes the ALJ did not make a specific finding regarding Plaintiff's "episodes of decompensation" pursuant to 20 C.F.R. § 404.1520a(e)(2).  Id. ("The [ALJ's] decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.").

2003 conducted at the request of the Commissioner.[5]  (Tr. at 94).  Dr. Eggerman diagnosed Plaintiff with a "[m]ood disorder not otherwise specified[,] [m]arijuana abuse, in early full remission [and] [b]orderline personality disorder."  (Tr. at 98).  Dr. Eggerman's findings included the following:

> [Plaintiff's] ability to understand and remember short simple instructions and carry out [same] . . . is *mildly* limited.  Her ability to understand and remember detailed instructions and carry out [same] . . . is *moderately* limited.  Her ability to make judgments on simple work related decisions is *mildly* limited.
>
> [Plaintiff's] ability to interact appropriately with the public, supervisors and coworkers is *moderately* limited.  [Plaintiff's] ability to respond appropriately to work pressures in a usual work setting is *moderately* limited, and his/her ability to respond appropriately to changes in a routine work setting is *mildly* to *moderately* limited.

(Tr. at 99) (emphasis added).  Dr. Eggerman assessed Plaintiff's prognosis "from a psychiatric perspective [a]s fair."  (Tr. at 99).

12.  Although the ALJ apparently took into account Dr. Eggerman's opinion that Plaintiff was mildly limited in her ability to understand, remember and carry out short, simple instructions, he did not mention the remainder of Dr. Eggerman's findings.  (Tr. at 19.)  The mental RFC set forth by the ALJ suggests that not all of the limitations described by Dr. Eggerman were adopted by the ALJ.[6]  However, the ALJ did not state that he rejected any part of Dr. Eggerman's assessment, nor indicates why he would disregard Dr. Eggerman's conclusions regarding

---

[5]Plaintiff was referred to Dr. Eggerman by the Ohio Rehabilitation Services Commission, Bureau of Disability Determination.  (Tr. at 94).  Plaintiff states this agency "appears to be Ohio's equivalent to Disability Determination Services" used by the Social Security Administration in New Mexico.  (Memo at 4 n.7).

[6]For example, in concluding that Plaintiff has *no* inability to get along with others, the ALJ did not appear to adopt Dr. Eggerman's opinion that Plaintiff is *moderately limited* in her ability to interact appropriately with the public, supervisors and coworkers.

Plaintiff's ability to understand, remember and carry out detailed instructions, make judgments, interact appropriately with the public, supervisors and coworkers, or respond to pressure and changes in a work setting. Because the ALJ did not discuss this evidence, it is not clear whether or how the ALJ considered these findings from Dr. Eggerman's report in reaching his conclusion regarding Plaintiff's mental RFC.

13. The ALJ specifically referenced only one other medical opinion, a report by psychiatrist, Dennis Payne, M.D., dated May 23, 2005.[7] In that report, Dr. Payne noted that Plaintiff "reports being more irritable since getting off of Zyprexa.[8] Gets easily afraid[,] functioning is poor. [Positive] paranoia." (Tr. at 272). Dr. Payne ordered an adjustment in Plaintiff's medication regime, including an increase in Plaintiff's Seroquel dosage "to 200mg AM, [and] 600mg HS [at bedtime]."[9] (Tr. at 272). The ALJ described Dr. Payne's report as an unpersuasive "welfare form" whose "majority of findings are based on the claimant's own self-reporting and are inconsistent with the rest of the medical record." (Tr. at 19). The ALJ further noted that Dr. Payne "had seen the claimant only one or two times[10] and treatment had just

---

[7]The report is from the Barstow Counseling & Mental Health Center and is titled "MEDICATION VISIT INTERDISCIPLINARY NOTE San Bernadino County DEPARTMENT OF BEHAVIORAL HEALTH." (Tr. at 272) (capitalization in original).

[8]Zyprexa is a psychotropic agent indicated for the treatment of schizophrenia and bipolar disorder. See RxList at www.rxlist.com/cgi/generic/olanzapine_ids.htm.

[9]Seroquel is a psychotropic agent indicated for the treatment of depressive episodes and acute manic episodes associated with bipolar disorder. See id. www.rxlist.com/cgi/generic/quetiap_ids.htm. "The safety of doses above 800 mg/day has not been evaluated in clinical trials." Id.

[10]The record indicates that Dr. Payne saw Plaintiff twice prior to May 23, 2005. (See 265-66 (report dated 4-11-05); 273 (report dated April 25, 2005)).

begun." (Tr. at 19).

14. The ALJ's discounting of Dr. Payne's findings as "based on the claimant's own self-reporting" is suspect. As Plaintiff points out, it is not clear that Dr. Payne's opinions are based solely on Plaintiff's subjective reports. See Langley v. Barnhart, 373 F.3d 1116, 1119 (10th Cir. 2004) (finding the ALJ improperly rejected a medical opinion "based on his own speculative conclusion that the report was based only on claimant's subjective complaints"). Moreover, "a psychological opinion may rest either on observed signs and symptoms or on psychological tests." Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). Nevertheless, even assuming that the ALJ properly rejected Dr. Payne's opinion, nothing indicates that the ALJ properly considered (or considered at all) the opinions of treating physicians D. Shah, M.D.[11] or Muhammed I. Kaleem, M.D.[12] regarding Plaintiff's mental limitations. Assuming that the ALJ considered Dr. Shah's and Dr. Kaleem's opinions, his failure to "give good reasons in [the] . . . decision for the weight he ultimately assign[ed] the[ir] opinion[s]" is error. Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).

15. In his response, the Commissioner attempts to provide reasons why various opinions and findings of Drs. Eggerman, Shah, Payne and Kaleem are meritless or were properly rejected by the ALJ. However, the ALJ's decision must be evaluated solely on the reasons and analysis

---

[11]For example, on September 2, 2004, Dr. Shah completed a Medical Assessment of Ability to do Work-Related Activities (Mental) ("Mental Assessment") in which he rated Plaintiff's ability to relate to coworkers, deal with the public, interact with supervisors, deal with work stress, function independently and persist at a work-like task as "poor" or "none." (Tr. at 262).

[12]On January 6, 2004, Dr. Kaleem completed a Mental Assessment in which he rated Plaintiff's ability in the areas listed in note 11 *supra* as "poor." (Tr. at 104).

stated in his decision.  See Robinson, 366 F.3d at 1084 (citing Burlington Truck Lines, Inc. v. US, 371 U.S. 156, 168-69 (1962) (quotations and citations omitted)); see, also, Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting the general rule against post hoc justification of administrative action (citation omitted)); Taylor v. Schweiker, 739 F.2d 1240, 1243 (7th Cir. 1984) (citing Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984)) (explaining that "it is essential for meaningful appellate review for the ALJ to articulate reasons for accepting or rejecting particular sources of evidence").

16.  The ALJ "must discuss the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects."[13]  Threet v. Barnhart, 353 F.3d 1185, 1190 (10th Cir. 2003) (quoting Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996)).  Because the ALJ did not discuss the medical opinions set forth above, it is not clear whether or how the ALJ considered this evidence in reaching his conclusion regarding Plaintiff's mental RFC.  Thus, the ALJ's decision in this matter fails to provide the Court a sufficient basis from which to determine whether substantial evidence supports the ALJ's finding.

17.  For the reasons set forth above, the Court finds that this proceeding should be remanded for a re-hearing and re-assessment of Plaintiff's mental RFC.  On remand, Plaintiff shall have the opportunity to present witness testimony and submit treatment records from her providers in New Mexico.  Because of the potential impact that a re-evaluation of Plaintiff's mental RFC at step four may have on the Commissioner's findings regarding Plaintiff's disability

---

[13]The ability to use judgment, respond appropriately to supervision and deal with changes in a routine work setting are basic work activities.  See 20 C.F.R. § 404.1521(b).  Thus, an examining psychiatrist's opinion that Plaintiff may have some limitations in these areas due to a mental impairment is significantly probative evidence in evaluating Plaintiff's mental RFC.

and/or the application of the Grids, the Court need not address Plaintiff's allegations of error with respect to these issues at this time. The Commissioner should conduct additional proceedings, as necessary, following a re-assessment of Plaintiff's mental RFC.

**WHEREFORE,**

Plaintiff's Motion to Reverse or Remand Administrative Agency Decision **[Doc. 11]** is **granted**. This matter is remanded for further proceedings consistent with this opinion, to include:

(A)  a re-hearing, to include an opportunity for Plaintiff to submit treatment records from her providers in New Mexico and to present witness testimony;

(B)  a re-assessment of Plaintiff's mental residual functional capacity at step four; and

(C)  additional proceedings, as necessary, following the re-assessment of Plaintiff's mental residual functional capacity.

_Robert Hayes Scott_
ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE